UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. HICKEY,

                              Plaintiff,

    v.                                                           09-CV-01307

ANNE C. MYERS, DONALD P. ZINGALE, and
THE STATE UNIVERSITY OF NEW YORK
COLLEGE OF AGRICULTURE AND
TECHNOLOGY AT COBLESKILL.

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff, Thomas J. Hickey, brought the instant action seeking damages for retaliation pursuant to 42 U.S.C. § § 1981, 1983, and 2000d. See Docket No. 9. Plaintiff contends that both 42 U.S.C. § 2000(d) (Title VI) and 42 U.S.C. § 1981 encompass a complaint of retaliation against a person who has complained about a violation of another person's rights. See Docket No. 22 at 2. Plaintiff maintains that he was unlawfully removed from his position as Dean of the College of Liberal Arts and Sciences at the State University of New York College of Agriculture and Technology at Cobleskill (SUNY Cobleskill): (1) for opposing racial discrimination in education in violation of Title VI; (2) for opposing racial discrimination in contracts in violation of § 1981; (3) for opposing practices forbidden under the Equal Protection Clause of the United States Constitution; and (4) for speaking out on

matters of public concern in violation of the First Amendment to the United States Constitution. Id. at 9-10.

Defendants filed this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleging that Plaintiff: (1) fails to state a claim under Title VI; (2) does not state a First Amendment Retaliation Claim under 42 U.S.C. § 1983; (3) does not state a viable equal protection claim under 42 U.S.C. § 1983; and (4) has failed to state a claim under 42 U.S.C. § 1981. See Docket No. 19 at 4, 5, 13, & 14.

## I.     FACTS

Plaintiff assumed his position as the Dean of Liberal Arts and Sciences at SUNY Cobleskill in July of 2006. See Docket No. 9 at paragraph 23. Plaintiff contends that during his employment he learned that "[s]ince at least 1999, defendant college . . . had a policy of admitting students whose academic background, as revealed to its admissions office, [was] such that, given the current programs in effect at the college, they had no reasonable likelihood of graduating." Id. at paragraph 16. He discovered that the purpose of this admissions policy was to collect these students' tuition monies "for the express and admitted purpose of making budget." Id. Plaintiff maintains that the admission policy was fraudulent because the affected students were admitted to the College and paid tuition upon the representation that they could hope to attain a College degree. See Docket No. 22 at 7. Plaintiff alleges that these students were unable to earn a college degree without remedial education courses currently unavailable at the University. Id. at 5.

Plaintiff contends that the fraudulent admission policy was racially discriminatory. He alleges that not only did "defendant Myers [make] racist comments" but also "statistical evidence shows that defendants' fraudulent admissions impacted African-Americans

disproportionately; the College targeted African-Americans specially for recruitment using their fraudulent policies; African-American students and white students were treated as two separate populations for admissions purposes; appropriate admissions standards were not being adhered to; academic records were falsified to facilitate the admission of under-prepared African-American students; tuition from these students was used to subsidize programs from which they did not benefit; and a variety of racist incidents on campus discouraged African-Americans in particular from trying to remain in attendance at the College such that a "racially hostile environment" existed. Id at 11.

Plaintiff opposed the College's policy in communications with both the Provost, Defendant Myers, and the President of the College, Defendant Zingale, conveying his belief that the policy was discriminatory. See Docket No. 9 at paragraph 36 & 37. Plaintiff exposed to Defendant Myers how the policy had a dramatically greater impact on African-Americans. Id. at paragraph 36. Notwithstanding his complaint, Myers chose to allow the policy to continue. Id. In these communications, "[Plaintiff] repeatedly requested that the policy be discontinued, or, in the alternative, that the college design remedial programs so that these African-American students could succeed." Id. at paragraph 44. "In the Spring of 2008, [D]efendant Myers informed faculty members of her intention to seek [Plaintiff's] removal as Dean." Id. at paragraph 38. Plaintiff's Complaint alleges that "Defendant Myers directly tied [Plaintiff's] opposition to her policies concerning the admission and retention of students to her desire to remove him as Dean, claiming that he was 'not doing his job' in repeatedly bringing up these matters." Id. Plaintiff contends that he was "removed as Dean for opposing the fraud and in particular for exposing the role recruitment of African-American students played in carrying out this fraud." See Docket No. 22 at 6.

On November 23, 2009, Plaintiff commenced the instant action against Defendants alleging that they unlawfully retaliated against his complaints regarding the racially discriminatory treatment of African-American students. See Docket No. 1. On January 8, 2010, Defendants filed this motion to dismiss. See Docket No. 19. Plaintiff opposes this motion, arguing that he is entitled to assert claims of retaliation under Title VI and 42 U.S.C. § 1981, that his First Amendment retaliation claim is not barred by Garcetti v. Ceballos, 547 U.S. 410, 426 (2006), and that Defendants are not entitled to qualified immunity. See Docket No. 22. Plaintiff acknowledges the Second Circuit Court of Appeals case Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996), which disallows a retaliation claim based on the Equal Protection Clause. Id. at 22.

Alternatively, Plaintiff seeks leave to submit a proposed Second Amended Complaint if the Court believes further factual detail is necessary to comply with the technicalities of pleading. Id. at 25.

## II.   STANDARD OF REVIEW

When ruling on a motion to dismiss, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Burns v. Trombly, 624 F. Supp.2d 185, 196 (N.D.N.Y. 2008)(citing Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)). "'[A]lthough a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Therefore, to survive a motion to dismiss, Plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient to

raise a right to relief above the speculative level." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008) (internal quotation omitted).  Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Camarillo, 518 F.3d at 156 (citing Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007)).

"[W]hether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris, 572 F.3d at 72 (citing Ashcroft, 129 S. Ct. at 1950).  Review is "limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Medtech Prods. v. Ranir, LLC, 596 F. Supp.2d 778, 802 (S.D.N.Y. 2008) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 190 (2d Cir. 2007)); see Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)(citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)) (the court may review documents integral to the Complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the Complaint as exhibits and any statements or documents incorporated into the Complaint by reference.).

## III.     DISCUSSION

### a.     Whether Plaintiff States a Cause of Action under Title VI

Plaintiff alleges that Defendants, in their official capacities, violated Title VI by retaliating against Plaintiff for his complaints that the school admission policy was racially discriminatory.  Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance." 42 U.S.C. § 2000d.  This statute prohibits federal funding from going to any person, organization, or government agency that discriminates on the basis of race.

Defendant argues that Plaintiff fails to state a claim pursuant to Title VI because Plaintiff does not claim to be an intended beneficiary of Federal financial assistance. Defendants are correct in recognizing that Plaintiff does not have a claim for racial discrimination.  Plaintiff, however, is asserting a retaliation claim based on Defendants' action in removing him as Dean for reporting and speaking out against racial discrimination.

It is well established that "private individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages." Alexander v. Sandoval, 532 U.S. 275, 279 (2001); see Peters v. Jenney, 327 F.3d 307, 315 (4th Cir. 2003) ("It is well- settled that there is an implied private right of action to enforce [Title VI's] core prohibition of discrimination in federally-financed programs.") (citations omitted).  In Sandoval, the Supreme Court clarified and reiterated that "Title VI itself directly reaches only intentional discrimination." Id. at 281. The issue in this case is whether Title VI provides a private right of action for retaliation, and if so, whether the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint.[1]

---

[1] Defendant argues that 42 U.S.C. § 2000d-3 precludes Plaintiff from recovering under this statute. 42 U.S.C. §2000d-3 states, "[n]othing contained in this title [42 U.S.C. §§ 2000d-2000d-4a] shall be construed to authorize action under this title [42 U.S.C. §§ 2000d-2000d-4a] by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment." Defendant misinterprets Plaintiff's allegations and argues that Title VI is inapplicable in the employment discrimination context. Plaintiff does not allege employment discrimination but instead alleges that he was retaliated against because he spoke out against racial discrimination in the school's admission policy. This argument does not implicate § 2000d-3.

In <u>Jackson v. Birmingham Board of Education</u>, 544 U.S. 167, 174, 179 (2005), the Supreme Court addressed these questions within the context of Title IX. Title IX was "patterned after Title VI of the Civil Rights Act of 1964" and its wording mirrors Title VI.[2] Not surprisingly, the Supreme Court has often interpreted the two statutes together. <u>See</u> <u>e.g.</u> <u>Cannon v. University of Chicago</u>, 441 U.S. 677 (1979) (The "Court held that a private right existed to enforce Title IX of the Education Amendments of 1972" because Title IX was "patterned after Title VI of the Civil Rights Act of 1964" and a private right existed under Title VI.**)** In <u>Jackson</u>, the Supreme Court held that: (1) "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX;" and (2) "the statute . . . does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." By analogy, the Court holds that Title VI provides a cause of action for retaliation and that Plaintiff can bring this cause of action even though he was not the subject of the discrimination complaint. This interpretation is supported by the Fourth Circuit Court of Appeals' decision in <u>Peters v. Jenney</u>, 327 F.3d 307, 318 (4th Cir. 2003), which held that Title VI contains an "implicit prohibition on retaliation" for "opposing practices that one reasonably believes are made unlawful by § 601 [Title VI]." The Fourth Circuit held that this private right of action was available to the plaintiff regardless of whether the plaintiff was a member of the protected class. <u>Id</u>.

---

[2] Title IX states in pertinent part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."

- 7 -

To make a claim for Title VI retaliation, Plaintiff must show: (1) "participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protective activity and defendants' adverse action." McKie v. New York University, 2000 WL 1521200, at *4 (S.D.N.Y. October 13, 2000). "As in other civil rights contexts, to show 'protected activity,' the plaintiff in a Title VI retaliation case need 'only . . . prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring.'" Id. at 320 (citing Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir. 1990)); see also Ross v. Communications Satellite Corp., 759 F.2d 355, 355 n.1 (4th Cir. 1985) (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of discrimination was in fact meritorious.).

Here, the Complaint alleges that SUNY Cobleskill, an entity which receives Federal financial assistance, utilized a fraudulent admission policy targeting, "in a particularly egregious manner" African-Americans. This admission policy "admitted students who were unprepared for college" and who had no reasonable ability to attain a college degree, without remedial education classes, for the purpose of collecting their tuition monies. Plaintiff asserts that when he became aware of this policy he spoke out against "the college's policy of fraudulently inducing students, and especially African-American students to enroll at the college" believing the policy to be racially discriminatory. Plaintiff alleges that he requested faculty to identify those students in need of remediation, suggested new remedial programs, and sought to secure appropriate remedial education for these students. Additionally, Plaintiff alleges that he contacted Defendants with his concerns. Plaintiff alleges that in response to his efforts to expose the fraudulent and racially discriminatory policy he was

reviewed and removed as Dean.  Defendants admit that his speech and actions caused his termination.  Accordingly, Plaintiff has sufficiently plead a claim for retaliation under Title VI.

### b.     Whether Plaintiff States a Cause of Action under 42 U.S.C. § 1981

Plaintiff alleges that the individual Defendants, in their personal capacities, violated 42 U.S.C. § 1981 by retaliating against Plaintiff for opposing Defendants' admission policy. Section 1981, in pertinent part, states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  In CBOCS West Inc. v. Humphries, 128 S.Ct. 1951 (2008), the Supreme Court concluded that this provision "encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract related right."

"To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee was engaged in protected activity, or is a part of a protected class, and the employer was aware of that activity or class status; (2) the employee was qualified for the position; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Turner v. National R.R. Passenger Corp., 181 F. Supp.2d 122, 134 (N.D.N.Y. 2002); Gregory v. Daly, 243 F.3d 687, 700 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)); Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000).  It is undisputed that Plaintiff was qualified for and was removed from the position of Dean of the College of Liberal Arts and Sciences at SUNY Cobleskill.  Furthermore, Defendants

concede that Plaintiff was removed from his position because of his opposition to the admissions policy.

To prevail on the merits, Plaintiff must allege that he participated in a protected activity. To do this, Plaintiff must demonstrate that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Turner v. National R.R. Passenger Corp., 181 F. Supp.2d 122, 134 (N.D.N.Y. 2002). Plaintiff, however, does not have to prove that the conditions against which he protested actually amounted to a violation of § 1981. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful, so long as he can establish that he possessed some good faith, reasonable belief that the underlying challenged actions of the employer violated the law) (internal citations omitted)); Turner, 181 F. Supp.2d at 134; Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

Defendants argue that "§ 1981 provides that African-American students enjoy the same right to contract with SUNY Cobleskill as other students, regardless of race." See Docket No. 19. Accordingly, African-American students were permitted "to enter into a contract for education at SUNY Cobleskill." Id. Defendants maintain that Plaintiff's efforts to preclude a class of African-Americans from attending SUNY Cobleskill is not a protected activity under § 1981.

Plaintiff does not argue that African-Americans should be precluded from enrolling at SUNY Cobleskill. Instead, Plaintiff alleges that under-qualified African-Americans were targeted and fraudulently coerced into entering into contracts with the College with the understanding they could attain a college degree. The College was fully aware that this was

extremely unlikely given the lack of remedial courses available. Plaintiff alleges that he was removed as Dean of the College because he vocally opposed this admission policy. Specifically, Plaintiff contends that Defendants fraudulently induced students into contracting with the school for the chance to receive a college degree in order to use their tuition money to make budget. Plaintiff maintains that Defendants intentionally targeted and recruited African-Americans for the fraudulent scheme and that the scheme disproportionately affected African-American students. Plaintiff argues that by contracting with these African-American students to earn a college degree but not providing them with remedial education, SUNY Cobleskill intentionally prevented the students from attaining a college degree thus interfering with the benefit of their contracts. Plaintiff alleges that he "exposed this disparity to the Provost, who, in light of her own biased opinion on the issue, chose to allow the policy to continue taking its toll on the affected students" and in retaliation for his complaints removed him from his position as Dean. See Docket No. 9 at 17, 21, 35-36, 41-43. The Court finds that these allegations sufficiently plead a claim for retaliation under § 1981.

### c. Whether Defendants violated Plaintiff's Equal Protection Rights

Plaintiff alleges that the individual defendants in their personal capacities violated the Equal Protection Clause by retaliating against Plaintiff, as enforced under 42 U.S.C. § 1983. Because Plaintiff concedes that the Second Circuit does not recognize a retaliation claim under the Equal Protection Clause, his claim must be dismissed. Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996).

### d. Whether Defendants violated Plaintiff's First Amendment Rights

Plaintiff has asserted a First Amendment retaliation claim. A public employee who makes a First Amendment claim of employment retaliation must show that: (1) he engaged in

- 11 -

protected speech; (2) he suffered an adverse employment decision, and (3) his speech was a motivating factor in the adverse employment action.  See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); Cioffi v. Averill Park Central School Dist. Board of Ed., 444 F.3d 158, 162 (2d Cir. 2006).  Plaintiff identifies his vocal opposition to the SUNY Cobleskill admission policy as the speech at issue in his retaliation claim.  Plaintiff maintains that as a result of his vocal opposition he was reviewed and removed as Dean of the College of Liberal Arts and Sciences.

A public employee's speech may be constitutionally protected only if the plaintiff has spoken out as a citizen, not as an employee, on matters of public concern, rather than on matters of personal interest, and the state lacks an adequate justification for treating the employee differently from any other member of the general public.  See Garcetti, 547 U.S. 410; Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Cotarelo v. Sleepy Hollow Police Dept., 460 F.3d 247, 252 (2d Cir. 2006); Grillo v. New York City Transit Authority, 291 F.3d 231, 235 (2d Cir. 2002); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech,'" and summary judgment is appropriate.  Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (citing Garcetti, 547 U.S. at 418).

In Garcetti v. Ceballos, 547 U.S. 410, 426 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not

insulate their communications from employer discipline."³  The Second Circuit, in Weintraub v. Board of Education of the City School District of the City of New York, 2010 WL 262663, at *6 (2d Cir. 2010),  further clarified the holding in Garcetti, finding that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer."  In Weintraub, the Second Circuit Court of Appeals held that a grievance filed by a teacher about student disciplinary proceedings was filed pursuant to his official duties "because it was part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher-namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." (internal quotations omitted).  Id.

Here, Plaintiff maintains that his complaints were not pursuant to his official duties because he was removed as Dean for "not doing his job."  Defendants argue that Plaintiff's complaints were in furtherance of his official duties and therefore undeserving of First Amendment Protection.  Plaintiff's complaints concerned SUNY Cobleskill's policies for admission and retention of students, and the curriculum offered.  As the Dean of the College of Liberal Arts and Sciences, Plaintiff's job duties included participation in the process of

---

³In Garcetti, 547 U.S. at 426, the Supreme Court reasoned that, "restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created. . . When he went to work and performed the tasks he was paid to perform, [plaintiff] acted as a government employee.  The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." In Garcetti, the plaintiff, Cebellos, a deputy district attorney serving as a calendar deputy, was contacted by a defense attorney, informed of inaccuracies in an affidavit used to obtain a critical search warrant, and asked to review the case.  This was not an unusual request of a calendar deputy.  Upon investigation, Cebellos concluded there were serious misrepresentations in the affidavit and relayed his findings to his supervisors.  Cebellos followed up by preparing a disposition memorandum.  The Supreme Court held that these communications and the memorandum were written pursuant to his official duties as a prosecutor and, therefore, were not protected by the First Amendment.

Academic Review, a job which evaluated whether students were able to succeed at the college level.  See Docket No. 22.  This job duty is directly tied to the issue of whether students were entering the college prepared for college level academics and whether these students were receiving adequate remedial classes.  Plaintiff's complaints about the fraudulent admission policies directly affected Plaintiff's ability to properly execute his job as Dean and even more specifically his job on the Academic Review board.  Like in Weintraub, 2010 WL 262663, at *6, the Court agrees that Plaintiff's complaints were made pursuant to his official job duties as the disputed policies were part-and-parcel with his ability to execute his duties.  Accordingly, Plaintiff's First Amendment Retaliation Claim is dismissed because his speech was not protected.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's First Amendment retaliation claim and equal protection claim and DENIED in all other respects.

IT IS SO ORDERED.

Dated:March 2, 2010

_____
Thomas J. McAvoy
Senior, U.S. District Judge