**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS J. HICKEY,**

                         **Plaintiff,**

  vs.                                                  09-CV-01307
                                                         (MAD/ DEP)

**ANNE C. MYERS, DONALD P. ZINGALE, and**
**THE STATE UNIVERSITY OF NEW YORK**
**COLLEGE OF AGRICULTURE AND**
**TECHNOLOGY AT COBLESKILL,**

                         **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**COOPER ERVING & SAVAGE, LLP**       **PHILLIP G. STECK, ESQ.**
39 North Pearl Street
4th Floor
Albany, New York 12207
Attorneys for Plaintiff

**OFFICE OF NEW YORK STATE**         **JAMES B. MCGOWAN, ESQ.**
**ATTORNEY GENERAL**
Albany Office
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Thomas Hickey, formerly the Dean of Liberal Arts and Sciences at the State University of New York College of Agriculture & Technology at Cobleskill ("SUNY Cobleskill" or "the College"), alleges that he was retaliated against by Defendants in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), and in violation of 42 U.S.C. § 1981 ("section 1981"), because he spoke about racial discrimination at SUNY Cobleskill. Defendants

in this action are SUNY Cobleskill, its former President, Donald P. Zingale, and its former Provost and Vice President of Academic Affairs, Anne C. Myers. Currently before the Court are the following motions: (1) Plaintiff's motion *in limine* to exclude from evidence personal emails he sent using state resources (Dkt. No. 69); (2) Plaintiff's motion *in limine* to preclude Defendants from making any reference to a prior lawsuit that he filed against a former employer for breach of contract and defamation (Dkt. No. 88); and (3) Defendants' motion to quash three nonparty trial subpoenas (Dkt. No. 82).

The Court assumes familiarity with the factual background in this action, as well as previous orders and decisions in this matter.

## II. DISCUSSION

**A.    Motions** *in limine*

### *1. Standard of Review*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* No. 94–cv–5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

### *2. Plaintiff's motion to exclude evidence of his computer usage*

On October 15, 2012, Plaintiff filed a motion *in limine* to prevent the admission of evidence showing Plaintiff's use of SUNY Cobleskill computers to conduct personal business, as well as e-mails containing racial and sexual material. *See* Dkt. No. 69. Plaintiff contends that evidence pertaining to his efforts to acquire an amateur baseball team amount to "after-acquired evidence" and cannot be used to show that Plaintiff's employment was terminated for improper use of state resources because this evidence was not obtained until after his removal as dean. *See id*. at 2. Further, Plaintiff argues that this evidence alone is insufficient to support his removal as dean, since e-mails recovered from his account relating to the baseball team amount to "less than one-hundredth of one percent" of the e-mail sent from his state account, and there is no evidence that he would have been terminated had the College known at the time he received or sent the e-mails in question. *See id*. Plaintiff also seeks to exclude e-mails that were sent as part of an e-mail distribution list involving several other faculty members that contained offensive jokes, including sexually and racially charged material. *See id*. at 3. Plaintiff argues that these e-mails occurred after he had been terminated as dean, do not amount to harassment or any other sanctionable offense because all participants consented to the exchange, and should be excluded as collateral evidence. *See id*.

Defendants contend that evidence of Plaintiff's use of SUNY Cobleskill computers to conduct his personal business is relevant to showing his poor job performance. *See* Dkt. No. 70 at 1. They argue that because Plaintiff has to show that the College's reasons for Plaintiff's discharge were pretextual, any evidence that Plaintiff was not adequately performing his job while dean must be admitted. *See id*. Defendants also intend to use Plaintiff's alleged

3

misrepresentations of his computer use during his deposition as possible grounds to impeach his credibility. *See id.* at 2. Further, Defendants argue that evidence of Plaintiff's participation in e-mails involving ethnic and homophobic slurs undermines his attempt to show a good faith basis and reasonable belief that racial bias was the basis for decisions made by other administrators. *See id.*

Plaintiff argues that the evidence should be excluded on the ground that it is after-acquired evidence of employee wrongdoing, and is therefore inadmissible. *See* Dkt. No. 69 at 2. The after-acquired evidence rule applies where an employer attempts to introduce evidence that was not known by the employer at the time of the employee's termination as a post-hoc justification for the employer's decision to discharge the employee. *See McKennon v. Nashville Banner Publ'g. Co.*, 513 U.S. 352, 361 (1995). In *McKennon*, the Supreme Court determined that after-acquired evidence of employee misconduct that was not the basis for the employer's decision to terminate the employee was not relevant for the purpose of determining whether the employer had violated the Age Discrimination in Employment Act ("ADEA").[1] *See id.* at 356. The Court determined that the evidence was relevant, however, for the purpose of determining the remedies available under the ADEA, and could be used to mitigate the employee's claims for backpay. *See id.* at 360–61. Thus, if the employer learned of employee wrongdoing that would have resulted in that employee's discharge had the employer known about it, that evidence could be considered in determining the appropriate damages. *See id.*; *see also Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 682 (S.D.N.Y. 1995) (holding that an employer's discovery that an

---

[1] Since the substantive, antidiscrimination provisions of the ADEA are modeled upon the provisions of Title VII, *see Trans World Airlines, Inc. v. Thurston*. 469 U.S. 111, 121 (1985), the *McKennon* analysis is applicable in Title VII cases. *See, e.g.*, *Manard v. Fort Howard Corp.*, 47 F.3d 1067 (10th Cir. 1995); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667 (S.D.N.Y. 1991).

4

employee had misappropriated firm resources and improperly copied and retained documents during discovery was after-acquired evidence because it was an independent ground for the employee's termination that was not known at the time of the termination. This evidence could not be used to establish liability, but was admissible for the purpose of determining damages).

The Court finds that the computer usage and e-mails at issue in the present case qualify as after-acquired evidence under *McKennon*. This evidence was not known to Defendants at the time they made the decision to remove Plaintiff from his position as dean, thus it would be inappropriate to consider this evidence as a justification for Defendants' decision to remove Plaintiff from his position. While Defendants argue that this evidence is directly relevant to their justification that Plaintiff failed to perform his job adequately, there are a number of formal complaints relating to Plaintiff's job performance contained in the record that were known to Defendant's prior to Plaintiff's removal. Thus, the exclusion of this evidence will not be prejudicial to Defendants' case.

While after-acquired evidence is generally inadmissible to show liability in employment actions, such evidence may be admitted for the limited purpose of mitigating damages. *See McKennon*, 513 U.S. at 361. Thus, Defendants may introduce evidence of Plaintiff's computer usage and controversial e-mails to show that Plaintiff is only entitled to backpay until the date this evidence was discovered or not entitled to reinstatement or front pay, provided that this conduct alone would have supported Plaintiff's removal from his position. *See id.*; *see also Zhou v. State University of New York Institute of Technology*, No. 6:08–cv–0444, 2013 WL 2237842, *4-*5 (N.D.N.Y. May 21, 2013) (holding that the after-acquired evidence at issue may be used to impeach the plaintiff's credibility pursuant to Rule 608(b) of the Federal Rules of Evidence and to limit damages regarding the plaintiff's termination).

5

Based on the foregoing, the Court grants Plaintiff's motion *in limine* in part, and will exclude after-acquired evidence of Plaintiff's computer usage for the purpose of illustrating Defendants' theory of Plaintiff's job performance.  The evidence will be admissible for the limited purpose of mitigating damages.  To the extent that Plaintiff seeks to prevent Defendants from using this evidence for impeachment purposes on cross-examination, the Court reserves judgment.

### *3. Plaintiff's motion to preclude evidence of Plaintiff's previous lawsuit*

On February 11, 2013, Plaintiff filed a motion *in limine* to preclude Defendants from making any reference to Plaintiff's prior lawsuit against his previous employer, Roger Williams University, for breach of contract and defamation.  *See* Dkt. No. 88.  The lawsuit culminated in a favorable settlement for Plaintiff eleven years ago, and involved issues of contract and tort law in the State of Rhode Island.  *See id*. at 1.  Plaintiff argues that this previous settlement is of no importance to the federal claims at issue in the present matter.  *See id*.  Plaintiff further argues that the previous lawsuit is a collateral matter that would require a mini-trial on the issues that were raised in that lawsuit in order for the jury to understand it, and would needlessly distract the jury from the issues in the present case.  *See id*.

Defendants contend that the evidence is relevant because while Plaintiff was employed at SUNY Cobleskill, he threatened school officials by advising them of his earlier lawsuit, and "touted his earlier suit against Roger Williams University as part of his scheme to extort officials into retaining him in his position."  *Id*. at 2.  Defendants contend that Plaintiff threatened to sue his subordinates, those who encouraged participation in his evaluation, and threatened to sue those who were critical of his performance.  *See id*. at 2.

While Plaintiff argues that evidence of the prior lawsuit would be used to attack Plaintiff's

6

credibility (*See* Dkt. 88 at 1), Defendants argue that this evidence goes directly to the merits of the case, and is inextricably intertwined with the Defendants' grounds for removing Plaintiff from his position. *See* Dkt. 91 at 2.  They contend that Plaintiff's repeated publication of his prior lawsuit against Roger Williams University formed a basis for Defendants to believe that Plaintiff was manufacturing claims of racism and unequal treatment in bad faith as a continuation of his "boldface extortion tactics to attempt to retain his job." *See id.* at 3.

  Two rules of evidence are implicated by Plaintiff's motion.  Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therein." Fed. R. Evid. 404(b).  Such evidence may be allowed, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b)(2).  Rule 403 provides the district court with broad discretion to exclude evidence where the probative value is substantially outweighed by the possibility of jury prejudice or confusion. *See* Fed. R. Evid. 403; *see also United States v. LaFlam,* 369 F.3d 153, 155 (2d Cir. 2004).

  It is well settled that it is improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a "chronic litigant." *Outley v. City of New York*, 837 F.2d 587, 591–93 (2d Cir. 1998).  Prior lawsuits have been found admissible at trial, however, if they are offered for purposes other than to prove a party's litigiousness.  *See Brewer v. Jones*, 222 Fed. Appx. 69, 70 (2d Cir. 2007) (holding that evidence of prior lawsuits was allowed to show a possible cause of plaintiff's injuries unrelated to the acts of defendant); *see also United States v. Chisum*, 502 F.3d 1237, 1241–1242 (10th Cir. 2007) (allowing evidence of prior litigation to show intent in a criminal tax evasion case), *cert. denied*, 552 U.S. 1211, 128 S.Ct. 1290 (2008); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 688–89 (11th Cir. 1984) (allowing evidence of prior

7

litigation to show defendant's notice of a similar product defect).

In *Van Deelen v. Johnson*, the court allowed the admission of some of a plaintiff's prior lawsuits, finding that the prior proceedings were similar enough to the action before the court that they could reveal that the plaintiff had a motive, plan or scheme to bring similar kinds of claims against those who crossed him. *See Van Deelen v. Johnson*, No. 05-4039, 2008 WL 4683022, * 3 (D. Kan. Oct. 22, 2008). The court determined that the factual similarities between the past and present cases showed more than just a generic pattern of litigiousness. *See id*. Although the court acknowledged the potentially prejudicial nature of the challenged evidence, the court determined that unfair prejudice could be prevented by providing a limiting instruction to restrict the proffered evidence to its proper purpose.[2] *See id*. at *4.

In the present matter, the parties do not dispute that admitting Plaintiff's prior lawsuit against his employer solely to show that he had a propensity for being litigious would be impermissible. Defendants, however, request that the evidence be admitted for the purpose of showing that Plaintiff publicized the prior lawsuit in an effort to intimidate those who disagreed with him, and to show Plaintiff's own acknowledgment that he was not adequately fulfilling his duties. When used for these purposes, the evidence is, as Defendants argue, inextricably intertwined with the merits of the case and does more than just establish a generic pattern of litigiousness. *See id*. at *3.

The next consideration is whether the probative value of this evidence is substantially outweighed by any possible unfair prejudice or confusion. *See* Fed. R. Evid. 403. The Court has determined the evidence to be admissible for the purpose of proving that Plaintiff used the threat

---

[2] The court excluded some evidence involving prior litigation for which the defendants did not show any proper purpose, and which was insufficiently similar to the action before the court to have sufficient probative value. *See Van Deelen*, 2008 WL 4683022 at *5.

of litigation to intimidate others and in acknowledgment of his alleged failings as an administrator, and consequently, the scope of examination on this evidence is limited to these purposes. The Court will not allow a mini-trial on the merits of the previous lawsuit, nor will Defendants be permitted to use the evidence to attempt to portray the Plaintiff as having a propensity for litigiousness. Additional limits on the use of these exhibits may be added at trial, as deemed necessary by the Court. Finally, Plaintiff may request a limiting instruction regarding the use of this evidence to further minimize any prejudice.

Based on the foregoing, the Court denies Plaintiff's motion *in limine* without prejudice and will allow evidence of Plaintiff's prior lawsuit against Roger Williams University for limited purposes, consistent with Rule 404(b) and Rule 403.

**B.     Defendants' motion to quash three nonparty subpoenas**

On October 25, 2012, Defendants filed a motion to quash three trial subpoenas issued by Plaintiff pursuant to Rule 45 of the Federal Rules of Civil Procedure. *See* Dkt. No. 82-3 at 2. The three subpoenas are subpoenas *duces tecum* and *ad testificandum*. *See id*. Defendants contend that the three subpoenas are in direct defiance of the Court's discovery orders, which provided that discovery ended in July of 2011. *See* Dkt. No. 56. Moreover, Defendants contend that the subpoenas seek information that is "absurdly irrelevant and grossly misguided." *See* Dkt. No. 82-3 at 2.

*1. Standard of Review*

Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F. 3d 104, 108 (2d Cir. 2003) (citation omitted); *see also Concord Boat*

9

*Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). ("The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court"). The court applies a balancing test to determine whether a subpoena imposes an undue burden on the party from whom information is requested. *See Concord*, 169 F.R.D. at 49. Specifically, the court must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. Inconvenience alone does not justify quashing a subpoena that seeks potentially relevant testimony. *See id*.

### *a. Appropriateness of trial subpoenas*

As a general matter, trial subpoenas are appropriate only in certain circumstances, such as to secure an original document first disclosed during discovery, for the purposes of trial preparation, or for memory recollection. *See Revander v. Denman*, No. 00 Civ. 1810, 2004 WL 97693, *1 (S.D.N.Y. Jan. 21, 2004). When a party issues subpoenas after the discovery deadline has passed to obtain documents the party was aware of before the discovery cutoff date, the subpoenas and discovery requests should be denied. *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (citations omitted). Subpoenas calling for "any and all records" are exactly the kind of "shotgun" subpoenas that should not be issued on the eve of trial. *See Pitter v. Am. Express Co.*, No. 82 Civ. 7451, 1984 WL 1272, *6 (S.D.N.Y. Nov. 27, 1984).

### *b. Relevance*

Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters relevant to the claims and defenses of the parties. *See* Fed. R. Civ. P. 26(b)(1). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the

10

allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd., LP*, No. 03 Civ. 1382, 2003 WL 23018833, *8 (S.D.N.Y. Dec. 23, 2003) (citation omitted). "As a general matter, all relevant evidence is admissible under Federal Rules of Evidence unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

For the purposes of evaluating a motion to quash a subpoena, the court need only determine that the requested evidence is relevant, and does not need to make determinations regarding admissibility. *See U.S. v. Watchmakers of Switzerland Information Center Inc.*, 27 F.R.D. 513, 515 (S.D.N.Y. 1961). Since the threshold for establishing relevance is relatively low, "[p]rotection against undue liberality in the admission of evidence . . . is furnished by Rule 403." *United States v. Mangan*, 575 F.2d 32, 45 (2d Cir. 1978). Under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R. Evid. 403). In evaluating evidence pursuant to Rules 401 and 403, the trial judge has broad discretion. *See Mangan*, 575 F.2d at 45.

### *c. Undue Burden*

Rule 45 requires a court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). The party seeking to quash the subpoena carries the

burden of proving that a subpoena imposes an undue burden on a witness. *See Concord*, 169 F.R.D. at 48–49. The moving party cannot meet its burden by merely asserting that compliance would be burdensome, but must also set forth the "manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, *3 (S.D.N.Y. May 19, 2005) (citation omitted). In ruling on whether or not to quash a subpoena, the time and labor required to comply with the subpoena must be taken into consideration. *See Watchmakers of Switzerland*, 27 F. R. D. at 515.

### *2. The subpoena to State University Chancellor Zimpher*

On September 15, 2012, Plaintiff issued a subpoena to State University Chancellor Nancy Zimpher, seeking the production of "[a]ll reports to the Chancellor's office concerning Donald P. Zingale's performance as President of SUNY Cobleskill, including, but not limited to, letters from community members, SUNY employees, and members of the College Board of Trustees, performance evaluations, letters seeking corrective action, counseling letters, and his 'third-year review' by the Office of Chancellor." *See* Dkt. No. 82-2 at 4.

#### *a. Appropriateness*

Defendants contend that obtaining this information in a trial subpoena is inappropriate because all of this information should have been obtained during the discovery period. *See* Dkt. No. 82-3 at 3. Plaintiff contends that because Zingale was not removed from his position until August 2011, after the discovery cutoff, he could not have requested the information sought in the subpoena during discovery. *See* Dkt. No. 84 at 4. The Court agrees that Zingale's termination after the discovery cutoff is a significant event, and many of the documents requested in the

12

subpoena were either not available, or not known to Plaintiff during discovery. Although Defendants are correct in suggesting that Plaintiff could have sought some of the documents during discovery, Zingale's termination, which occurred after the discovery cutoff, greatly increased the importance and relevance of these documents to Plaintiff's case. It is plausible that, prior to Zingale's termination, Plaintiff was not aware of certain documents or the importance of those documents. Therefore, the use of a trial subpoena to obtain the requested documents is appropriate.

### *b. Relevance*

Evidence pertaining to Zingale's performance as President of SUNY Cobleskill is directly relevant to Plaintiff's case because Plaintiff challenges the propriety and motivation of Zingale's decisions as a SUNY Cobleskill administrator. Complaints against Zingale in his official capacity pass the relevance threshold set forth by Rule 401.

### *c. Burden*

Defendants also contend that requiring Chancellor Zimpher to testify is overly burdensome and inappropriate given her lack of personal knowledge in the case and the demands of her position as Chancellor of the entire SUNY system. *See* Dkt. No. 82-3 at 4. Plaintiff agrees that the personal testimony of the Chancellor is not required, and instead argues that the subpoena addressed to Zimpher was intended to apply to her office generally. *See* Dkt. No. 84 at 2. Plaintiff intends to have a representative of the SUNY system testify that the memorandum sent by Zingale outlining the responsibilities of a Dean was difficult to understand and inconsistent with the standards for performance the Chancellor's office maintains. *See id*. The Court agrees

that it would be unreasonable to compel Chancellor Zimpher to testify; therefore, the Chancellor's personal appearance shall be substituted by a representative from her office with sufficient personal knowledge of the information requested by Plaintiff.

As to the information requested in the subpoena, the Court finds that Defendants have failed to show that compliance with the subpoena would be overly burdensome. The information requested is limited to information involving Zingale that was reported to the Chancellor's office. The evidence appears to be readily accessible in Zingale's personnel file, and Defendants had notice that Zingale's performance record would be relevant to Plaintiff's case. The Court finds that Defendants have failed to explain the manner and extent of the burden compliance would impose. *See Kirschner*, 2005 WL 1214330 at *3.

Additionally, while Defendants argued that compliance with the subpoena is unreasonable given that the original trial date was scheduled for March 11, 2013 and the subpoena was not filed until September 15, 2012, this burden has been alleviated by the fact that the trial has been rescheduled for July 8, 2013. *See* Dkt. No. 90. The Court finds that the Chancellor's office will have adequate time in which to produce the requested information.

Based on the foregoing, the Court denies Defendants' motion to quash the subpoena to SUNY Chancellor Zimpher.

### *3. The subpoena to SUNY Cobleskill Vice President Joel Smith for outside reports*

On October 18, 2012, Plaintiff issued a subpoena compelling Joel Smith, Vice President for College Relations at SUNY Cobleskill, to produce "[a]ny report, program review, audit, and/or assessment or draft of same completed by any outside entity, State, Federal or private, within the two years preceding this letter, of the financial aid practices, programs, policies, or

finances of The State University of New York College of Agriculture and Technology at Cobleskill." Dkt. No. 82-2 at 3. Specifically, Plaintiff intended to obtain materials regarding a pending audit by the United States Department of Education; the subpoena, however, does not specifically request this information. *See* Dkt. No. 84 at 6. The audit centered on SUNY Cobleskill's compliance with recommendations to alter the College's processes for the return of student loan funds, and determination and reporting of student withdrawals from the College. *See* Dkt. 84-1 at 3. Plaintiff argues that this report is directly relevant to his allegations that the College took advantage of unqualified students to make budget, even though the investigation focused on the year following Plaintiff's dismissal. *See* Dkt. No. 84 at 6.

Defendants contend that the subpoena requests materials that would prematurely expose draft documents, and seek to quash the subpoena on the grounds that the deliberative process privilege and law enforcement privilege apply. *See* Dkt. 82-1 at 2. They further argue that Plaintiff has failed to show that the information contained in the report is relevant. *See* Dkt. 82-3 at 5.

### *a. Appropriateness*

The Court finds that Plaintiff's attempt to obtain this information through a trial subpoena, rather than during discovery, is inappropriate. While it appears that Plaintiff seeks a specific report involving the Department of Education investigation, the subpoena, as written, is overly broad and encompasses the type of material that should have been requested during discovery. *See Brown v. City of Syracuse*, 684 F. Supp. 2d 461, 467 (N.D.N.Y. 2009) (granting motion to quash trial subpoena where the Plaintiff failed to provide reason why internal disciplinary records were not requested during discovery). Plaintiff has offered no explanation for his failure to request this information during discovery, thus the use of a trial subpoena to produce these

15

materials is inappropriate.

### *b. Undue Burden*

Moreover, the Court finds that the subpoena is overly broad and poses an undue burden on Vice President Smith. The request seeks "any and all" records from "any outside entity" that pertain to any College policy. This request potentially includes thousands of documents. While it appears that Plaintiff is most interested in obtaining the draft of the Department of Education's investigation report, the subpoena, as written, is overly broad and would take significant time and resources in order to comply.[3] Subpoenas for "any and all records" are exactly the kind of "shotgun" subpoenas that should not be issued on the eve of trial. *Pitter*, 1984 WL 1272 at *6.

Based on the foregoing, the Court grants Defendants' motion to quash the subpoena to Vice President Smith for outside reports.

### *4. The subpoena to SUNY Cobleskill Vice President Joel Smith for instances of workplace violence*

On September 15, 2012, Plaintiff issued a subpoena to Vice President Smith, requesting "[a]ll documents containing any findings by the New York State Department of Labor, pursuant to Article 2 of the New York State Labor Law, concerning allegations of workplace violence at SUNY Cobleskill. *See* Dkt. No. 82-1 at 8. Defendants seek to quash the subpoena on the grounds that it is overly broad, fails to specify a date range, and does not seek material that is

---

[3] Since the motion to quash is granted on the grounds that the subpoena is overly broad and would impose an undue burden, it is unnecessary to address Defendants' claims that the Department of Education investigation report is privileged. Plaintiff may file an additional subpoena seeking the Department of Education investigation report, at which time the Court will address whether the deliberative process privilege applies and whether Mr. Smith has standing to invoke this privilege.

16

relevant to the present case. *See* Dkt. No. 82-3 at 6. Plaintiff contends that these materials are relevant, because examples of harassment or abuse toward employees could support Plaintiff's retaliation claim. *See* Dkt. No. 84 at 8.

### *a. Appropriateness*

Plaintiff seeks all evidence of workplace violence, and does not specify a time period for this inquiry. On February 24, 2012, after the close of discovery, SUNY Cobleskill was cited by the New York State Department of Labor for having inadequate policies in place to address instances of workplace violence in seven respects. *See* Dkt. No. 84 at 9; Dkt. No. 84-2. The fact that this report was issued after the discovery cutoff alone does not excuse Plaintiff's failure to request this information during routine discovery. Plaintiff argues that all examples of workplace violence are relevant to his claims of racial discrimination, thus Plaintiff knew the importance of obtaining this information prior to the issuance of the citation.

### *b. Relevance*

Plaintiff contends that the requested information is relevant because it could support his claim that he was treated differently than other employees who were involved in disputes with College administration. *See* Dkt. No. 84 at 9. Plaintiff makes no distinction between workplace violence and racial discrimination and harassment, and argues that reports of workplace violence are relevant because they will show that SUNY Cobleskill did not have a uniform policy in place to address claims of harassment among their employees. *See* Dkt. No. 84 at 9.

The Court finds that Plaintiff has failed to establish that the requested information is relevant to his retaliation claim. In 2006, New York State enacted legislation requiring public employers to perform a risk evaluation and to develop and implement programs to prevent and

17

minimize workplace violence caused by assaults and homicides.  *See* 12 N.Y.C.R.R. Part 800.6. The regulations define workplace violence as "[a]ny physical assault or acts of aggressive behavior occurring where a public employee performs any work-related duty in the course of his or her employment . . ." *Id.*  Plaintiff fails to show how SUNY Cobleskill's failure to comply with 12 N.Y.C.R.R. Part 800.6 is relevant to the present case.  This case does not involve any allegations of physical assault or threatened violence, and while there are allegations that Plaintiff bullied other faculty members, the requested information of all evidence of workplace violence is not sufficiently relevant to Plaintiff's claim that he was removed from his position as dean in retaliation for questioning the motivations, wisdom and fairness behind the College's admission policies.

In support of allowing the subpoena, Plaintiff contends that there were "far worse incidents on campus involving other administrators who were favorites of Ms. Myers who were never disciplined in any way."  *See* Dkt. No. 84 at 9.  While this information may be relevant to Plaintiff's claim that Myers acted with a discriminatory intent toward him, Plaintiff has failed to allege that these incidents encompass instances of workplace violence.  Further, such information could be obtained by other, less burdensome means, such as during Myers' deposition or through the discovery of other disciplinary files.

### *c. Undue Burden*

Additionally, the Court finds that compliance with the subpoena would impose an undue burden on Vice President Smith.  The subpoena does not specify a time period for requested information, thus Mr. Smith would be expected to produce all evidence of workplace violence in the College's ninety-nine year history.  As discussed previously, because the requested materials is at best tangentially related to Plaintiff's claims, the Court finds that producing all incidents of

workplace violence for an unspecified period of time would pose an unnecessary and undue burden on Vice President Smith and College staff.

Based on the foregoing, the Court grants Defendants' motion to quash the subpoena to Vice President Smith seeking all documents relating to incidents of workplace violence.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* to exclude evidence of his computer usage and certain e-mails sent to other faculty (Dkt. No. 69) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* to preclude evidence of Plaintiff's previous lawsuit against his former employer (Dkt. No. 88) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to quash the subpoena to SUNY Chancellor Zimpher (Dkt. No. 82-3) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to quash the subpoena to Vice President Smith seeking outside reports of College admission and financial aid policies (Dkt. No. 82-3) is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to quash the subpoena to Vice President Smith seeking all incidents of workplace violence (Dkt. No. 82-3) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 3, 2013
　　　　Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge